Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone: 516.741.4977
Facsimile: 516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT MURPHY,<br><br>Plaintiff,<br><br>vs.<br><br>SPIRIT AEROSYSTEMS HOLDINGS, INC., ROBERT D. JOHNSON, STEPHEN A. CAMBONE, IRENE M. ESTEVES, WILLIAM A. FITZGERALD, PAUL E. FULCHINO, RONALD T. KADISH, JOHN L. PLUEGER, JAMES R. RAY, PATRICK M. SHANAHAN, LAURA H. WRIGHT, and JANE P. CHAPPELL,<br><br>Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Robert Murphy ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this stockholder action against Spirit AeroSystems Holdings, Inc. ("Spirit" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and together with the Company, the "Defendants"), for violations of

Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to merge the Company with The Boeing Company ("Parent") through merger vehicle Sphere Acquisition Corp., a direct wholly owned subsidiary of Parent, ("Merger Sub," and together with Parent, "Boeing"), as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all-stock merger transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a July 1, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the transaction, each share of Class A common stock of Spirit ("Company Common Stock") issued and outstanding immediately prior to the Effective Time will be automatically cancelled and cease to exist and will be converted into the right to receive a number of shares of Boeing Common Stock.

3. The exchange ratio will be determined by taking the value of Boeing Common Stock equal to (a) if the volume weighted average price per share of Company Common Stock on the New York Stock Exchange for the 15 consecutive trading days ending on and including the second full trading day prior to the Effective Time (the "Boeing Stock Price"), is greater than $149.00 but less than $206.94, the quotient obtained by dividing $37.25 by the Boeing Stock Price, rounded to four decimal places, or (b) if the Boeing Stock Price is greater than or equal to $206.94, 0.1800 or (c) if the Boeing Stock Price is equal to or less than $149.00, 0.2500 (the "Merger Consideration").

4. On August 12, 2024, the Company and Boeing caused to be filed with the SEC a Form S-4 attaching a Registration Statement (the "Registration Statement").

5. The Proposed Transaction is unfair for a number of reasons. Significantly, it

appears as though the Board has entered the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

6. The Registration Statement is materially deficient, depriving Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction, and is thus, in violation of the Exchange Act. As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Spirit and Boeing, provided by Spirit management to the Company Board and the Company's financial advisor Moelis & Company LLC ("Moelis"); and (c) the data and inputs underlying the fair value assessment that purport to support the financial opinion created by Moelis and provided to the Company and the Board.

7. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

8. Plaintiff is a citizen of California, and at all times relevant hereto, has been a Spirit stockholder.

9. Defendant Spirit engages in the design, engineering, manufacture, and marketing of commercial aerostructures worldwide. Spirit is incorporated in Delaware and has its principal place of business at 3801 South Oliver Street, Wichita, KS 67210. Shares of Spirit common stock trade on the New York Stock Exchange ("NYSE") under the symbol "SPR."

10. Defendant Robert D. Johnson ("Johnson") has been the Chairman of the Company Board at all relevant times.

11. Defendant Stephen A. Cambone ("Cambone") has been a director of the Company at all relevant times.

12. Defendant Irene M. Esteves ("Esteves") has been a director of the Company at all relevant times.

13. Defendant William A. Fitzgerald ("Fitzgerald") has been a director of the Company at all relevant times.

14. Defendant Paul E. Fulchino ("Fulchino") has been a director of the Company at all relevant times.

15. Defendant Ronald T. Kadish ("Kadish") has been a director of the Company at all relevant times.

16. Defendant John L. Plueger ("Plueger") has been a director of the Company at all relevant times.

17. Defendant James R. Ray ("Ray") has been a director of the Company at all relevant times.

18. Defendant Patrick M. Shanahan ("Shanahan") has been a director of the Company at all relevant times. In addition, Defendants Shanahan serves as the Company's President and Chief Executive Officer ("CEO").

19. Defendant Laura H. Wright ("Wright") has been a director of the Company at all relevant times.

20. Defendant Jane P. Chappell ("Chappell") has been a director of the Company at all relevant times.

21. Defendants identified in ¶¶ 9 - 20 are collectively referred to as the "Individual Defendants."

22. Non-Party Boeing, together with its subsidiaries, designs, develops, manufactures, sells, services, and supports commercial jetliners, military aircraft, satellites, missile defense, human space flight and launch systems, and services worldwide.

23. Non-Party Merger Sub is a direct wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

24. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

25. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

26. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NYSE which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

***Company Background***

27. Defendant Spirit engages in the design, engineering, manufacture, and marketing of commercial aerostructures worldwide. It operates through three segments: Commercial, Defense & Space, and Aftermarket. The Commercial segment offers forward, mid, and rear fuselage sections and systems, floor beams, nacelles, struts/pylons, horizontal and vertical stabilizers, flaps and slats flight control surfaces, wing structures, and wing systems. The Defense & Space segment engages in the fabrication, bonding, assembly, testing, tooling, processing, engineering analysis, and training on fuselage, strut, nacelle, and wing aerostructures; provision of missiles and hypersonics solutions, such as solid rocket motor throats, nozzles, re-entry vehicle thermal protections systems; forward cockpit and cabin, and fuselage work on rotorcraft aerostructures; and classified programs. The Aftermarket segment provides maintenance, repair, and overhaul services; fuselage, strut, nacelle, and wing aerostructures spare parts; repair services for radome, flight control surfaces, and nacelles; rotable assets trading and leasing; and engineering services.

***The Flawed Sales Process***

28. As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company.

29. The Registration Statement fails to provide information as to why the Board would agree to a deal in which stockholders' interests would be diluted, with little to no consideration given.

30. The Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Boeing, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

31. The Registration Statement fails to provide adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction.

32. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

33. On July 1, 2024, Spirit and Boeing issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> WICHITA, Kan., July 1, 2024 /PRNewswire/ -- Spirit AeroSystems [NYSE: SPR] ("Spirit") today announced it has entered into a definitive merger agreement under which The Boeing Company [NYSE: BA] ("Boeing") will acquire Spirit for $37.25 per share in Boeing common stock (subject to the collar described below). At $37.25 per share, this represents an equity value of approximately $4.7 billion and an enterprise value of approximately $8.3 billion including Spirit's last reported net debt. The price of $37.25 per share represents a 30% premium to Spirit's closing stock price of $28.60 on February 29, 2024, the day before Spirit and Boeing issued press releases confirming they were in discussions regarding a potential transaction.
>
> "After carefully evaluating Boeing's offer to combine, we are confident this transaction is in the best interest of Spirit and its shareholders, and will benefit Spirit's other stakeholders," said Patrick M. Shanahan, President and Chief Executive Officer of Spirit. "Bringing Spirit and Boeing together will enable greater integration of both companies' manufacturing and engineering capabilities, including safety and quality systems."

Spirit also announced today that it entered into a binding term sheet with Airbus SE [EUR: AIR.PA] ("Airbus"). Under the term sheet, the parties will continue to negotiate in good faith to enter into definitive agreements for Airbus to acquire certain Spirit assets that serve Airbus programs, concurrently with the closing of Spirit's acquisition by Boeing.

Shanahan continued, "We are proud of the part we have played in Airbus' programs and believe bringing these programs under Airbus ownership will enable greater integration and alignment."

**Transaction Terms**

Under the terms of the definitive merger agreement with Boeing, Spirit shareholders will receive for each of their shares of Spirit common stock a number of shares of Boeing common stock equal to an exchange ratio calculated as $37.25 divided by the volume weighted average share price (VWAP) of Boeing common stock over the 15-trading-day period ending on the second trading day prior to the closing (the "Closing Price"), subject to a floor of $149.00 per share of Boeing common stock and a ceiling of $206.94 per share of Boeing common stock. Spirit shareholders will receive 0.25 shares of Boeing common stock for each of their shares of Spirit common stock if the Closing Price is at or below $149.00, and 0.18 shares of Boeing common stock for each of their shares of Spirit common stock if the Closing Price is at or above $206.94.

The definitive merger agreement with Boeing and the term sheet with Airbus were unanimously approved by the Spirit Board of Directors. The closing under the definitive merger agreement with Boeing is subject to the completion of the divestiture of the Airbus businesses by Spirit and is subject to other closing conditions, including approval of the definitive merger agreement by Spirit shareholders and receipt of regulatory approvals. The closing of the Airbus transaction, if a definitive agreement for the Airbus transaction is entered into with Airbus, will be subject to the substantially concurrent closing of the Boeing acquisition of Spirit and will be subject to other closing conditions, including the receipt of regulatory approvals. The closings of these transactions are expected to occur in mid-2025.

In addition, Spirit plans to pursue the divestiture of certain operations. These include Spirit's business and operations in (1) Subang, Malaysia, (2) Prestwick, Scotland that support Airbus programs, and (3) Belfast, Northern Ireland other than those that support Airbus programs.

***Potential Conflicts of Interest***

34. The breakdown of the benefits of the deal indicates that Spirit insiders are the primary beneficiaries of the Proposed Transaction, not the Company’s public stockholders such as

Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Spirit.

35. Additionally, Company insiders currently own Company PSUs and RSUs, some of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| | Outstanding Spirit PSUs | | Outstanding Spirit RSUs | | |
|---|---|---|---|---|---|
| Named Executive Officer | Number (#) | Value ($) | Number (#) | Value ($) | Total ($) |
| Patrick M. Shanahan | — | — | 768,235 | 26,127,672 | 26,127,672 |
| Irene M. Esteves[a] | — | — | 139,598 | 4,747,728 | 4,747,728 |
| Scott M. McLarty | 29,080 | 989,011 | 20,850 | 709,109 | 1,698,119 |
| William E. Brown[b] | 22,803 | 775,530 | 25,217 | 857,630 | 1,633,160 |
| Alan W. Young | — | — | — | — | — |
| Mark J. Suchinski | — | — | — | — | — |
| Duane F. Hawkins[c] | 18,018 | 612,792 | 17,211 | 585,346 | 1,198,138 |
| Thomas C. Gentile III | — | — | — | — | — |
| Samantha J. Marnick | — | — | — | — | — |

36. In addition, employment agreements with certain Sharecare executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff. The golden parachute compensation is as follows:

*Golden Parachute Compensation*

| Named Executive Officer | Cash ($)[1] | Equity ($)[2] | Perquisites / Benefits ($)[3] | Total ($)[4] |
|---|---|---|---|---|
| Patrick M. Shanahan | 2,338,462 | 26,127,672 | 45,000 | 28,511,134 |
| Irene M. Esteves | 3,050,000 | 4,747,728 | 27,600 | 7,825,328 |
| Scott M. McLarty | 1,683,077 | 1,698,119 | 21,156 | 3,402,352 |
| William E. Brown | 780,923 | 1,633,160 | — | 2,414,083 |
| Alan W. Young[5] | — | — | — | — |
| Mark J. Suchinski[6] | — | — | — | — |
| Duane F. Hawkins | 108,402 | 1,198,138 | – | 1,306,540 |
| Thomas C. Gentile III[6] | — | — | — | — |

| | | | | |
|---|---|---|---|---|
| Samantha J. Marnick[6] | — | — | — | — |

| Named Executive Officer | Cash Severance ($) | Annual Bonus ($) | LTIP Cash Award ($) | Retention Bonus ($)[c] | Sign-On Retention Bonus ($) | Total ($) |
|---|---|---|---|---|---|---|
| Patrick M. Shanahan | 2,338,462 | — | — | — | — | 2,338,462 |
| Irene M. Esteves | 700,000 | — | — | 2,100,000 | $250,000 | 3,050,000 |
| Scott M. McLarty | 467,521 | 514,273 | 701,282 | — | — | 1,683,077 |
| William E. Brown[a] | 300,923 | 480,000 | — | — | — | 780,923 |
| Alan W. Young | — | — | — | — | — | — |
| Mark J. Suchinski | — | — | — | — | — | — |
| Duane F. Hawkins[b] | — | 108,402 | — | — | — | 108,402 |
| Thomas C. Gentile III | — | — | — | — | — | — |
| Samantha J. Marnick | — | — | — | — | — | — |

37. The Registration Statement also fails to adequately disclose communications regarding post-transaction employment, if any, which took place during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

38. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

39. Thus, while the Proposed Transaction is not in the best interests of Spirit, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

40. The Company Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially

misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

41. The Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction, as follows:

a. Information as to why the Board would agree to a deal in which stockholders' interests would be diluted, with little to no consideration given;

b. Whether the confidentiality agreements entered into by the Company with Boeing differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

c. All specific conditions under which any standstill provision contained in any confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Boeing, would fall away; and

d. Complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction.

*Omissions and/or Material Misrepresentations Concerning Spirit and Boeing Financial Projections*

42. The Registration Statement fails to provide material information concerning financial projections for Spirit provided by Spirit management to the Board and Moelis and relied

upon by Moelis in its financial analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

43. Notably, the Registration Statement reveals that as part of its analysis, Moelis reviewed, "certain internal information relating to the business, earnings, cash flow, assets, liabilities and prospects of Spirit furnished to Moelis by Spirit, including financial forecasts provided to or discussed with Moelis by the management of Spirit."

44. The Registration Statement should have, but fails to provide, certain information in the projections that Spirit management may have provided to the Board and Moelis. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

45. With regard to the *Summary of Spirit Forecasted Financial Information*, the Registration Statement fails to disclose:

a. Net Revenue, including the underlying inputs, metrics, and assumptions used to determine same;

b. Adjusted EBITDA, including the underlying inputs, metrics, and assumptions used to determine same;

c. Adjusted EBITDA (excluding forward loss reversal), including the underlying inputs, metrics, and assumptions used to determine same;

d. Adjusted EBIT, including the underlying inputs, metrics, and assumptions used to determine same; and

e. Unlevered Free Cash Flow, including the underlying inputs, metrics, and assumptions used to determine same.

46. The Registration Statement fails to provide financial projections for Boeing, which are utterly invaluable to Company stockholders, such as Plaintiff, in assessing the fairness of the Proposed Transaction.

47. This information is necessary to provide the Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

48. Without accurate projection data for Spirit, Boeing, and the Combined Company being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the exchange ratio, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Fairness Opinion by Moelis*

49. In the Registration Statement, Moelis describes its Fairness Opinion and the various financial analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the Fairness Opinion.

50. With respect to the *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose:

a. The inputs, metrics, and assumptions used to determine the discount rates range of 9.50% to 11.75% utilized;

b. The inputs, metrics, and assumptions used to determine the terminal value multiples range of 7.00x to 8.75x utilized;

c. The inputs, metrics, and assumptions used to determine the terminal year Adjusted EBITDA multiples range of 7.00x to 8.75x;

d. The inputs, metrics, and assumptions used to determine the estimated cost of equity range of 10.25% to 17.25% utilized; and

e. The Company's weighted average cost of capital utilized.

51. With respect to the *Selected Publicly Traded Companies Analysis*, the Registration Statement fails to disclose:

a. The specific data analyzed for each of the selected publicly traded companies;

b. The inputs, metrics, and assumptions used to determine the "Unaffected Date" Total Enterprise Value ("TEV")/ 2025E Adjusted EBITDA multiple utilized for each of the selected companies;

c. The inputs, metrics, and assumptions used to determine the "Unaffected Date" TEV/ 2026E Adjusted EBITDA multiple utilized for each of the selected companies;

d. The inputs, metrics, and assumptions used to determine the "June 26, 2024," TEV/ 2025E Adjusted EBITDA multiple utilized for each of the selected companies;

e. The inputs, metrics, and assumptions used to determine the "June 26, 2024," TEV/ 2026E Adjusted EBITDA multiple utilized for each of the selected companies;

f. The inputs, metrics, and assumptions used to determine the TEV/ 2025E Adjusted EBITDA multiples range of 7.0x to 8.5x utilized; and

g. The inputs, metrics, and assumptions used to determine the TEV/ 2026E Adjusted EBITDA multiples range of 6.0x to 7.5x utilized.

52. With respect to the *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose:

a. The six selected precedent transactions Moelis reviewed and considered;

b. The date of which each selected transaction was consummated;

c. The aggregate value of each selected transaction;

d. The TEV/ NTM Adjusted EBITDA multiples range of 8.0x to 9.0x utilized; and

e. The TEV/ LTM Adjusted EBITDA multiples range of 8.5x to 9.5x utilized.

53. With respect to the *Equity Research Analyst Share Price Targets Analysis,* the Registration Statement fails to disclose:

a. The specific price targets analyzed; and

b. The specific Wall Street firms that generated the analyzed price targets.

54. The Registration Statement fails to provide financial analyses done for Boeing. Without this information, Stockholder is unable to properly evaluate the state of Boeing to ascertain whether the Proposed Transaction is fair for Company stockholders.

55. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

56. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the Valuation Report and the Board's determination that the Proposed Transaction is in his best interests as a public Spirit stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**<u>(Against All Defendants)</u>**

57. Plaintiff repeats all previous allegations as if set forth in full herein.

58. Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

59. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

60. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

61. The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

62. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

63. The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

64. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

65. Plaintiff repeats all previous allegations as if set forth in full herein.

66. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in

connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

67. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

68. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Company's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

69. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause the Company to engage in the

wrongful conduct complained of herein. The Individual Defendants controlled the Company and all of its employees. As alleged above, the Company is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: August 29, 2024

**BRODSKY & SMITH**

By: *Evan J. Smith*

Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*